**CARUCEL INVESTMENTS, L.P., Plaintiff,**

v.

**NOVATEL WIRELESS, INC., et al., Defendants.**

**Case No. 15–cv–61116–BLOOM/Valle**

United States District Court, S.D. Florida.

Signed January 15, 2016

Filed January 19, 2016

James M. Sarnecky, Michael K. Lindsey, Gavrilovich, Dodd & Lindsey, LLP, San Diego, CA, Oliver Alan Ruiz, Malloy & Malloy, P.L., Miami, FL, for Plaintiff.

Amar L. Thakur, Bruce R. Zisser, Branden S. Stein, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA, Edward Maurice Mullins, Ana Maria Barton, Astigarraga Davis Mullins, Grossman, P.A., Miami, FL, for Defendant.

## ORDER

BETH BLOOM, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court upon Defendants' Motion to Transfer or, Alternatively, Sever and Stay Claims against AT & T, ECF No. [35] ("Motion" or "Mot."), as alleged in Plaintiff's Complaint for patent infringement, ECF No. [1] ("Complaint").[1] The Court has carefully reviewed the Motion, the record, the supporting and opposing submissions, including Plaintiff's Response, ECF No. [44] ("Response" or "Resp."), Defendants' Reply, ECF Nos. [49] ("Reply"), and Plaintiff Sur–Reply [55] ("Sur–Reply"), the exhibits attached thereto, the applicable law,

1. Plaintiff filed a First Amended Complaint on December 16, 2015, ECF No. [58], before the Motion was fully briefed.

and is otherwise fully advised. For the reasons that follow, Defendants' Motion to Transfer is **GRANTED.**

## I. Background

On May 27, 2015, Carucel Investments, L.P. ("Plaintiff"), filed the instant Complaint against Defendants Novatel Wireless, Inc. ("Novatel"), Verizon Communications, Inc. ("Verizon"), and AT & T Mobility LLC ("AT & T") (collectively, "Defendants"). TigerDirect, Inc. ("Tiger"), was originally named as a fourth defendant in the case. However, the Court entered an Order dismissing Tiger without prejudice on September 17, 2015, ECF No. [14], two days after Carucel filed a Notice of Voluntary Dismissal without Prejudice as to Tiger, ECF No. [11]. The remaining three Defendants filed the instant Motion on October 22, 2015.

Plaintiff alleges that Defendants have been and are infringing upon claims of U.S. Patent No. 7,221,904 (the "904 Patent"), U.S. Patent No. 7,848,701 (the "701 Patent"), U.S. Patent No. 7,979,023 (the "023 Patent"), U.S. Patent No. 8,463,177 (the "177 Patent"), U.S. Patent No. 8,718,-543 (the "543 Patent"), and U.S. Patent No. 8,849,191 (the "191 Patent") (collectively, the "Asserted Patents"). Compl. ¶ 2. Each of the Asserted Patents, entitled "Mobile Communication System with Moving Base Station," is "valid and enforceable," and was "duly and legally issued by the United States Patent and Trademark Office to the named inventor Charles D. Gavrilovich," between 2007 and 2014. *Id.* ¶¶ 14–27.

The Complaint alleges that Novatel's mobile broadband hotspot devices (the "Accused Products")[2] infringe the Asserted Patents. *Id.* ¶ 28. Additionally, Verizon and AT & T "are infringing the Asserted Patents by using, selling, importing and/or offering for sale one or more of the Accused Products."[3] *Id.* ¶¶ 29–31. Plaintiff asserts six counts against all Defendants, one for each of the patents allegedly infringed by Defendants. *See generally id.* As a result of Defendants' infringement of the Asserted Patents, Carucel seeks "monetary damages under 35 U.S.C. § 284 in an amount to be proven at trial, but in no event less than a reasonable royalty to compensate for Defendants' infringements, together with interest and costs as fixed by the Court." *Id.* ¶ 32.

In their Motion, Defendants request that the Court transfer this action to the Southern District of California pursuant to 28 U.S.C. § 1404. In the event that the Court denies the transfer, Novatel and AT & T alternatively seek the severance and stay of the claims asserted against AT & T. Mot. at 1–2.

## II. Legal Standard

The transfer statute, 28 U.S.C. § 1404(a), which embodies a codification and revision of the *forum non conveniens* doctrine, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place

---

2. These devices include, inter alia, the MiFi 6620L, MiFi 2 Global Hotspot, MiFi 6620, AT & T MiFi Liberate (Model No. MiFi5792), MiFi 5510L, MiFi 5510, MiFi 4620L, MiFi 4510L, MiFi 4082, MiFi 500 (Model No. MIFI5580), and Sprint MiFi 500. *Id.*

3. Verizon offers the MiFi 6620L for sale on its website www.verizonwireless.com; and AT & T advertises and offers the MiFi Liberate for sale on its website www.att.com. *Id.*

called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The statute grants broad discretion to the district court. *See Osgood v. Disc. Auto Parts, LLC*, 981 F.Supp.2d 1259, 1263 (S.D.Fla.2013) (stating that the "standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court") (citation omitted); *see also Piper Aircraft*, 454 U.S. at 253, 102 S.Ct. 252 (noting that "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*") (citation omitted); *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F.Supp.2d 1271, 1275 (S.D.Fla.2011) ("The Court has broad discretion in determining whether these factors suggest that transfer is appropriate.").

■ In determining the appropriateness of transfer, courts employ a two-step process. *See Osgood*, 981 F.Supp.2d at 1263 (citing *Abbate v. Wells Fargo Bank, Nat. Ass'n*, 2010 WL 3446878, at *4 (S.D.Fla. Aug. 31, 2010)); *Precision Fitness Equip., Inc. v. Nautilus, Inc.*, 2008 WL 2262052, at *1 (S.D.Fla. May 30, 2008) (citing *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F.Supp.2d 1373, 1376 (S.D.Fla. 2003); *Jewelmasters, Inc. v. May Dep't Stores*, 840 F.Supp. 893, 894–95 (S.D.Fla. 1993) (citing *Cont'l Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960))). First, the district court is tasked with determining whether the action could have been pursued in the venue to which transfer is sought. *See Osgood*, 981 F.Supp.2d at 1263 (citing *Abbate*, 2010 WL 3446878, at *4). With regard to this first prong, an action "might have been brought" in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court. *Windmere Corp. v. Remington Prods., Inc.*, 617 F.Supp. 8, 10 (S.D.Fla. 1985) (citing 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3845 (1976)). Second, "courts assess whether convenience and the interest of justice require transfer to the requested forum." *Id.* (citation omitted). In analyzing this second prong, the Court applies several factors weighing various public and private interests. *See Motorola Mobility*, 804 F.Supp.2d at 1275–76.

■ Alternatively, Rule 21 of the Federal Rules of Civil Procedure vests district courts with the authority to "on just terms, add or drop a party" and "sever any claim against a party." Fed.R.Civ.P. 21. Thus, under Rule 21, district courts may sever any claim against any party and proceed with it separately, or drop a party from the action with leave to re-file separately in a manner which avoids substantial prejudice (e.g., *nunc pro tunc* to the original filing date). *See United States v. O'Neil*, 709 F.2d 361, 367 (5th Cir.1983); *Hartley v. Clark*, 2010 WL 1187880, at *4 (N.D.Fla. Feb. 12, 2010) (Rule 21 permits dismissals of parties only if dismissal does not cause substantial prejudice); *Graziose v. Am. Home Products Corp.*, 202 F.R.D. 638, 641 (D.Nev.2001) (severing and permitting plaintiffs to re-file their complaints *nunc pro tunc* to avoid state of limitations issues). Through this lens, the Court now evaluates the instant Motion.

### III. Discussion

■ Defendants first seek transfer of this patent infringement case to the Southern District of California pursuant to 28 U.S.C. § 1404. The parties do not dispute that the instant action could have been pursued in the Southern District of California, and the Court concurs.[4] *See* Resp.

---

4. *Windmere Corp. v. Remington Prods., Inc.*, 617 F.Supp. 8, 10 (S.D.Fla.1985) ("An action

'might have been brought' in a proposed

at 1 n. 1 ("Carucel does not dispute that the case could have been filed in the Southern District of California."); *Osgood*, 981 F.Supp.2d at 1263 (citing *Abbate*, 2010 WL 3446878, at \*4) (stating that the first part of the two-step analysis in determining the appropriateness of transfer · involves assessing whether the action could have been pursued in the venue to which transfer is sought). Accordingly, the question before the Court is "whether convenience and the interest of justice require transfer to the requested forum." *Osgood*, 981 F.Supp.2d at 1263. Defendants, as the movants, bear the burden of demonstrating entitlement to transfer. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").

The Southern District of California, Defendants argue, has a much greater relationship to the parties' dispute and is a more convenient forum as the majority of the relevant witnesses and documentary evidence are located at Novatel's headquarters in San Diego, California. Furthermore, Defendants aver that "[e]ssentially all of the alleged conduct about which Plaintiff complains occurred outside of this forum." Mot. at 1. Thus, the interests of the parties and witnesses, as well as the interests of justice, Defendants aver, will be by served by transferring this case to California. *See id.*

Plaintiff counters that the private and public interest factors considered under § 1404, set forth below, weigh against transfer of this case, as the Southern District of Florida has "significant and weighty contacts with this patent infringement case. Not only is South Florida Plaintiff's home forum and has been so for

at least six years, but the Complaint also directly alleges repeated and systematic acts of infringement having occurred in this District." Resp. at 1. Particularly because "there is no single 'center of gravity' for a patent infringement case where witnesses are geographically dispersed and acts of infringement have occurred nationwide," and "great deference is accorded to a resident plaintiff's choice of forum," Plaintiff asserts that its choice of forum should remain undisturbed. *Id.*

 In analyzing whether or not a defendant has sufficiently demonstrated entitlement to transfer, a court considers the following private and public interest factors:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Motorola Mobility*, 804 F.Supp.2d at 1275–76 (quoting *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F.Supp.2d 1292, 1299 (S.D.Fla.2002) and citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir.2005)). "Ultimately, transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F.Supp.2d 1336, 1339 (S.D.Fla.2008) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996)). In the instant action, the

---

transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant

is amenable to process issuing out of the transferee court.").

Court is persuaded that the relevant factors weigh strongly in favor of transfer to the Southern District of California.

### 1. Private Interest Factors

Traditionally, a plaintiff's choice of forum is accorded considerable deference. *See In re Ricoh,* 870 F.2d at 573 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Motorola Mobility,* 804 F.Supp.2d at 1276 (quoting *Windmere,* 617 F.Supp. at 10). Indeed, district courts often grant motions to transfer venue in patent infringement cases when the plaintiff has chosen a forum that is not the "center of gravity of the accused activity." *Trace–Wilco, Inc., v. Symantec Corp.,* 2009 WL 455432, at *23 (S.D.Fla. Feb. 23, 2009) (noting that "[i]n patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity," and holding that a court may "disregard plaintiff's choice of forum in cases involving claims of patent infringement"). For patent infringement cases, the center of gravity is the jurisdiction "where the accused product was designed and developed." *Motorola Mobility,* 804 F.Supp.2d at 1276 (quoting *Trace–Wilco,* 2009 WL 455432, at *2–3). Moreover, "[t]he district court 'ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" *Trace–Wilco,* 2009 WL 455432, at *2 (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.,* 571 F.Supp. 1185, 1188 (N.D.Ill.1983)) (granting a motion to transfer when "all development, testing, research, and production" along with "virtually all marketing and sales decisions were made" in the transferee forum, and "only some very limited sales activity occurred in this district."). In *Trace–Wilco,* the court further explained that "in intellectual property infringement suits, which often focus on the activities of the alleged infringer, its employees, and its documents . . . the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Id.* at *3 (quoting *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.,* 512 F.Supp.2d 1039, 1044 (S.D.Tex.2007)); *see In re Acer Am. Corp.,* 626 F.3d 1252, 1256 (Fed.Cir.2010) ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.").

Here, a majority of the design and development of the allegedly infringing products occurred in California, where Novatel maintains its headquarters and the majority of its relevant personnel. *See* ECF No. [35–1] (Declaration of John Wu, Novatel engineer, hereinafter, "Wu Decl.") ¶¶ 5–7. California has been Novatel's principal place of business since 1998, and Novatel employs over 158 people in the San Diego area. *Id.* ¶¶ 2, 5. Novatel's main research and development facilities, where most of the Accused Products and Services were designed and developed, are located in San Diego. *Id.* ¶ 6. Novatel's key engineers, who are likely to be witnesses in this case, live in the Southern District of California and work at Novatel's headquarters. *Id.* ¶¶ 6, 7. Specifically, John Wu, who is based in San Diego, will likely be called concerning the design, development, and operation of the Accused Products. *See* ECF No. [352] (Initial Disclosures submitted by Defendants Novatel and AT & T) at 3. Similarly, Novatel's sales and marketing efforts are managed from its headquarters in San Diego, where all of the key sales, market-

ing and finance employees—who would be likely witnesses in the case—reside, including Ron Schooler and Steve Linke. *Id.*

None of the remaining Defendants are incorporated in Florida or have their principal place of business in Florida. Of the four original Defendants, only Tiger was a Florida company. Compl. ¶ 7. With respect to the remaining Defendants, Novatel is a Delaware corporation with its principal place of business in San Diego, California; AT & T is a Delaware corporation with its principal place of business in Atlanta, Georgia; and Verizon is a Delaware corporation with its principal place of business in New York, New York. *Id.* ¶¶ 3–6. Defendants argue that the liability of AT & T and Verizon is limited to reselling the products at issue and, thus, limited evidence will be elicited from Georgia and/or New York.

*Amini Innovation* faced a similar set of facts. 512 F.Supp.2d at 1045. In that case, plaintiff filed suit in a jurisdiction where a group of reseller defendants was located, but where no other defendants resided. *See id.* After filing, the plaintiff settled all claims against the reseller defendants, who were dismissed from the action. *Id.* at 1042. This fact played a key role in the court's analysis of the private interest facts. *Id.* at 1045. In holding that "the bulk of private factors favor transfer, the court reasoned that plaintiff "settled with the [reseller] Defendants, thereby rendering Plaintiff's choice of forum much less significant." *Id.* at 1045–46 (explaining further that defendant's sales activity to the reseller defendants within the jurisdiction "comprises just one aspect of the widespread patent and copyright infringement alleged"). Similarly, here, Plaintiff has voluntarily dismissed reseller Defendant Tiger, who was the only defendant located within this District.

Although Plaintiff itself has ties to Florida, they are of a recent vintage. As a result, for most of the relevant time period, none of the alleged harm suffered occurred within the Southern District of Florida. Carucel did not file its application to transact business in Florida until December 9, 2013. *See* ECF No. [35–3] (Declaration of Branden S. Stein, counsel for Novatel, hereinafter, "Stein Decl.") ¶ 5. According to public record, from its formation in June 2000 until at least September 2010, Carucel's principal place of business was in Illinois, first in Naperville and later in Park Ridge, both suburbs of Chicago. *Id.* ¶¶ 3–6. The inventor of the Asserted Patents, Charles D. Gavrilovich, originally resided in Naperville, Illinois. *Id.* ¶ 2. He first moved to Florida, on a part-time basis, beginning in 2005, and then made South Florida his permanent, year-round home in his retirement in 2009. *See* ECF No. [44–1] (Declaration of Vera Gavrilovich, president of Carucel) ¶ 8. Members of the inventor's family who are involved in running Carucel continue to reside in South Florida. *Id.* ¶¶ 2–5.

Vera Gavrilovich, a family member who resides in South Florida and the president of Carucel, will likely be a material fact witness in this case regarding ownership of the patents-in-suit, infringement issues, licensing attempts, and Carucel's management. *Id.* ¶¶ 2–5, 9. However, no other likely witnesses appear to reside in the Southern District of Florida. *See generally id.*

Additionally, Carucel appears to have connections to the Southern District of California that would mitigate any burden of litigating this dispute in that District. Carucel lists a mailing address in Chula Vista, California, in its 2014 and 2015 annual reports, as well as in its application to transact business in Florida, filed on December 9, 2013. Stein Decl. ¶¶ 3–5. This

Chula Vista address is located in the Southern District of California, less than fifteen miles away from San Diego. *Id.* ¶ 7. It is the same address listed for the San Diego offices of Carucel's counsel in this case, Charles Gavrilovich, who shares a first and last name with the alleged inventor, Charles D. Gavrilovich—and, who in recent filings with the Florida Secretary of State, lists himself as a Limited Partner at Carucel. *Id.* ¶¶ 3, 4, 8. Plaintiff's San Diego counsel is listed at the bottom of each of Carucel's filings in the record, along with Plaintiff's Miami counsel. *See, e.g.*, Resp. at 21.

 Plaintiff claims that "[t]here can be no doubt that there are substantial ties between this lawsuit and the Southern District of Florida" because the Accused Products, which Plaintiff submits are sold nationally, also allegedly have been sold in Florida. Resp. at 4. However, "[t]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *Game Controller Technology LLC v. Sony Computer Entertainment America LLC*, 994 F.Supp.2d 1268, 1275 (S.D.Fla.2014) (citing *In re Acer*, 626 F.3d at 1256). Such allegations concerning Defendants' sale of the Accused Products make this District no more unique than any other federal district, because the Accused Products are available nationwide. Indeed, in *Game Controller*, the Court rejected the very argument that Plaintiff asserts here, *i.e.*, that the defendant's "*sale* of the accused products in this District is sufficient to establish a locus of operative facts in the Southern District of Florida." *Id.* at 1275 (emphasis in original) ("[Plaintiff's] Florida existence provides less than persuasive reason to deny transfer to the Northern District of California, where a majority of the alleged infringing activity takes place."); *see Cellularvision Technology & Telecommunications, L.P. v. Alltel Corp.*, 508 F.Supp.2d 1186, 1192 (S.D.Fla.2007) ("Plaintiffs have

demonstrated that at least [some Defendants] have conducted business in Florida. However Plaintiff alleges that Defendants have committed acts of infringement not just in the Southern District of Florida, but 'throughout the United States.' ... Even though some of Defendants' accused infringement activities are occurring in Florida, the activities of the Defendants in Florida are directed from Arkansas. Overall, it appears that the connection to Arkansas is stronger."); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed.Cir. 2008) (holding that nationwide sales gave the citizens of plaintiff's chosen forum "no more or less of a meaningful connection to this case than any other venue").

The parties appear financially able to litigate this case in the Southern District of California. It would be overly burdensome to require each of the California-based witnesses to travel nearly 2,000 miles to this District, as compared to requiring only Gavrilovich to travel to an area with which she appears to have familiarity. Nevertheless, Plaintiff is correct in pointing out that Defendants, that are large publicly-traded corporations, likely have more money at their disposal than Carucel, a limited family partnership. However, the case law to which Plaintiff cites in support of its argument is inapposite—while Carucel is not a large publicly-traded company, it is a corporate plaintiff, not an individual. *See Miracle v. N.Y.P. Holdings, Inc.*, 87 F.Supp.2d 1060, 1073 (D.Haw.2000) (denying motion to transfer venue to New York in case brought by Hawaii resident in home forum against New York newspaper); *see also Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 693 (S.D.N.Y.1994) (denying motion to transfer venue based on the means of the parties where individual plaintiffs were suing a large corporation). Although the Court is sympathetic to any potential additional cost to Carucel, the Court is not persuaded that the monetary obligation or

inconvenience to a corporate plaintiff, and/or its president, weighs in favor of denying transfer.

Interestingly, Plaintiff does not dispute any of the facts supporting Defendants' "center of gravity" argument, but rather seeks to redirect the Court to aspects of this case that do not tie to California. Nevertheless, these piecemeal issues do not obviate the indisputable fact that no aspect of the design or development of the Accused Products occurred in the Southern District of Florida. For example, the fact that additional AT & T and Verizon witnesses may be located in Atlanta or Washington or, alternatively, New York and New Jersey, provides little support for the denial of transfer. *See* Resp. at 4 ("Additionally, AT & T admits that its relevant sales and marketing decisions are made by personnel in Redmond, Washington, and outside of the Southern District of California. . . . Verizon itself admits that it has at least one relevant witness in New Jersey, outside of the Southern District of California."). The individuals responsible for the development and creation of the Accused Products, and, therefore, those with the most knowledge of the allegedly infringing functionalities, reside in Southern California. *See, e.g., Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Communications (USA) Inc.,* 2015 WL 224952, at *4 (S.D.Fla. Jan. 15, 2015).

The Federal Circuit expressly has rejected the argument that the presence of some witnesses outside of the proposed transferee forum somehow defeats witness convenience arguments. In *In re Genentech, Inc.,* the court disagreed "with the district court's rigid assessment," that "this factor should only favor transfer if it will be more convenient for all of the witnesses. . . . Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the

Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer." 566 F.3d 1338, 1345 (Fed.Cir. 2009). In a case analogous to the one at hand, the Honorable Judge Donald M. Middlebrooks recently found that a plaintiff's limited number of in-forum witnesses would not preclude transfer where a substantial portion of defendant's witnesses were located in the Northern District of California. *See Rothschild Digital Media Innovations, LLC v. Sony Computer Entertainment America LLC,* No. 14–cv–22134–MIDDLEBROOKS, ECF No. [22] (S.D.Fla. Aug. 28, 2014).

Similarly, here, this factor weighs heavily in favor of transfer, particularly because Plaintiff has ties to the Southern District of California as well. Additionally, potential third-party witnesses are located in or closer to the transferee district, such as one Novatel inventor that resides in California, and another Novatel inventor that resides in Washington, yet another fact supporting transfer. "The convenience of non-party witnesses is an important, if not the most important, factor in determining whether a motion for transfer should be granted." *Cellularvision Technology & Telecommunications, L.P. v. Cellco Partnership,* 2006 WL 2871858, at *3 (S.D.Fla. Sept. 12, 2006) (citing *Meterlogic, Inc. v. Copier Solutions, Inc.,* 185 F.Supp.2d 1292, 1301 (S.D.Fla.2002)). Furthermore, the issuance of subpoenas and power to enforce these witnesses' attendance at trial is vested in the Southern District of California. This District lacks that authority. For all of these reasons, the relevant private interests in this case strongly favor transfer to California.

### 2. Public Interest Factors and the Interests of Justice

The second part of the transfer determination requires the Court to

consider, based on the totality of the circumstances, the interests of justice as well as several other public interest factors including,

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Trace–Wilco*, 2009 WL 455432, at *2 (quoting *Piper Aircraft*, 454 U.S. at 258, 102 S.Ct. 252). An examination of these interests reveals that they lean in favor of transfer, although perhaps less starkly than the private factors.

Plaintiff implores the Court to impart great significance to maintaining this action here, in Plaintiff's home forum. However, as previously discussed, other than Plaintiff's residency in the State of Florida, this matter does not present circumstances in which Florida has a substantial interest. The burden imposed upon the Southern District of California's citizens is light, given that the California District has a substantial interest in adjudicating controversies involving a corporation employing hundreds of California residents. Further, the jurisdiction of the federal courts is not based on diversity, as patent infringement is governed by federal law. All federal courts are presumed to be equally familiar with patent law.[5] *See, e.g., Cento Group, S.p.A. v. OroAmerica, Inc.,* 822 F.Supp. 1058, 1062 (S.D.N.Y.1993) ("Cento has made only one claim based on federal patent law, and presumably both courts in New York and California are equally likely to be familiar with federal patent law."). Thus, no problems related to the governing law are raised by the transfer of this matter to the Southern District of California.

Ultimately, the public interest factors and the interests of justice favor transfer. The center of the alleged infringement, related parties, and the community with the most interest in this matter is simply not the Southern District of Florida. *See Trace–Wilco*, 2009 WL 455432, at *4 (finding that transfer would serve the interests of justice where the center of the accused activity occurred in the transferee district); *see generally ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*, 2013 WL 9827411, at *3 (S.D. Fla. June 14, 2013) (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3854 at 246–47 (3d ed. 2007) ("[A] number of federal courts have considered this factor [the interests of justice] decisive—outweighing the other statutory factors")). Because the Court finds that the instant circumstances favor a transfer, it need not address Defendants' Motion to Sever and Stay Claims as to AT & T.

## IV. Conclusion

Balancing the aforementioned elements, the Court finds that transfer to the Southern District of California is warranted. The alternative forum is not only an appropriate forum, but significantly more appropriate given the fact that the core of activity surrounding the design, development, and production of the Accused Products occurred there. As a result, many of the witnesses called to testify in this matter will likely hail from California. In contrast, although Plaintiff is a Floridian, the

---

**5.** The parties agree that the Court's familiarity with the governing law is a neutral factor here.

only other unique tie between the instant case and Florida is one witness that Plaintiff expects to call from Florida, Gavrilovich. Neither the number of witnesses that exist outside of both forums, nor the sale of Accused Products nationwide, including in Florida, persuades the Court that Florida is the proper venue under this fact pattern. Overall, California clearly has the strongest connection to this case.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Transfer, **ECF No. [35]**, is **GRANTED**. The Clerk is directed to **TRANSFER** this case to the United States District Court for the Southern District of California. Upon transfer, the Clerk shall **CLOSE** this case.

**DONE AND ORDERED.**